28 F.3d 108
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alfonso ALVARADO-ROMERO, Defendant-Appellant.
 No. 93-10389.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 11, 1994.
Decided July 13, 1994.
 
 1
 Before: NOONAN and T.G. NELSON, Circuit Judges, EZRA,* District Judge
 
 
 2
 MEMORANDUM**
 
 
 3
 Alfonso Alvarado-Romero ("appellant") brings this appeal from his conviction in the district court on the charge of importation of cocaine. Appellant contends that the district court erred in two ways: (1) the district court improperly denied his motion to dismiss the importation count on collateral estoppel grounds once the jury had acquitted him of possession with intent to distribute; (2) the district court improperly denied his motion for a mistrial when, during the second trial, the prosecutor commented on defense counsel's objection to a piece of evidence. For the reasons discussed below, we reverse.
 
 Collateral Estoppel
 
 4
 On April 23, 1992, Customs surveillance agents at the Mariposa Port of Entry caught and arrested appellant, who was driving a blue van which the agents had heard would be carrying drugs. The agents who searched the van discovered approximately 1200 pounds of cocaine packed in bundles stacked on the backseat, beneath blankets.
 
 
 5
 The government introduced the following evidence at trial: after waiving his Miranda rights, appellant admitted that he had met with certain people in Mexico who asked if he would be interested in driving a van to the United States. Appellant stated that he was to be paid $3,500 for transporting a load of marijuana in the van to Nogales, Arizona. He had been instructed to drive the van to Sacred Heart Hospital in Nogales, park it, secure it, and then return to Mexico for payment the following day. In this conversation, appellant denied knowing that the load was cocaine.
 
 
 6
 Appellant offered the following reason for his driving the van into the United States: appellant had been approached by some people in Mexico, who told him that they would help with his father's medical bills if he would drive a van to Nogales, Arizona, for them. One of these individuals was a known narcotics trafficker in Mexico. Appellant was told that he would not need his immigration card to cross the border, as everything had already been arranged with the Customs agents. The known narcotics trafficker offered appellant $3,500 as a gesture of goodwill (to help with his father's expenses) in return for appellant's services in taking the van across the border. None of these individuals mentioned the load of narcotics in the backseat.
 
 
 7
 At the jury trial held on December 16, 1992, the jury acquitted appellant as to Count Two of the indictment (possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1)), and hung as to Count One (importation of cocaine, in violation of 21 U.S.C. Sec. 952(a)).
 
 
 8
 On February 10, 1993, appellant's counsel orally moved to dismiss the importation count of the indictment on the basis of collateral estoppel. In a formal order filed February 11, 1993, the district court denied the motion to dismiss as without merit and frivolous. Appellant filed a timely notice of interlocutory appeal from this order, which the Ninth Circuit denied for lack of jurisdiction. In doing so, this court did not consider the merits of collateral estoppel.
 
 
 9
 On February 16, 1993, trial began on the importation count. On February 18, 1993, appellant was convicted of importation of cocaine. He was sentenced on June 1, 1993 to 120 months imprisonment, with a five-year term of supervised release.
 
 
 10
 The applicability of collateral estoppel and its relationship to double jeopardy involve issues of law reviewed de novo. U.S. v. Meza-Soria, 935 F.2d 166, 167 (9th Cir.1991). "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in a future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). To determine whether collateral estoppel bars retrial of issues following acquittal based on a general verdict, the court must determine whether "a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." U.S. v. Crooks, 804 F.2d 1441, 1461 (9th Cir.1986) ( citing U.S. v. Webbe, 755 F.2d 1387, 1388 (9th Cir.1985)). In Ashe, the Supreme Court instructed courts to analyze collateral estoppel "with realism and reality." 397 U.S. at 444.
 
 
 11
 The Ninth Circuit uses a three-step analysis to assess whether an ultimate fact has actually been litigated and decided:
 
 
 12
 (1) The two issues must be sufficiently similar and material to justify the use of collateral estoppel;
 
 
 13
 (2) The record of the first trial is reviewed to determine if the issue sought to be foreclosed was fully litigated; and
 
 
 14
 (3) The court determines if the issue was necessarily decided in the first trial.
 
 
 15
 Crooks, 804 F.2d at 1446 ( citing U.S. v. Schwartz, 785 F.2d 673, 681 (9th Cir.1986)).
 
 
 16
 The defendant bears the burden of proving that the issue whose relitigation he seeks to foreclose was actually and necessarily decided in the first trial. Dowling v. U.S., 493 U.S. 342, 350 (1990) (citations omitted).
 
 
 17
 Here, appellant was charged with importation of cocaine (count one) and possession with intent to distribute cocaine (count two). The elements of importation are: (1) knowingly possessing a controlled substance, and (2) intentionally bringing that controlled substance over the border. The elements of possession with intent to distribute are: (1) knowingly possessing a controlled substance, and (2) possessing it with the intent to deliver it to another person.
 
 
 18
 The appellant contends that his acquittal on the possession with intent to distribute charge forecloses subsequent prosecution on the importation charge. Specifically, appellant argues that, in order to acquit him of the possession charge, the jury must have found that he had no knowledge that the van contained the drugs.[1] According to the appellant, both possession of the drugs and intent to distribute were undisputed, given appellant's position as the van's driver and the quantity of drugs found in the van.
 
 
 19
 The Ninth Circuit faced an almost identical situation in U.S. v. Seley, 957 F.2d 717 (9th Cir.1992). In Seley, the defendant was acquitted at trial on possession with intent to distribute marijuana and importation of marijuana, but the jury hung on conspiracy to import marijuana. At trial, the prosecution tried to prove that defendant masterminded the scheme to bring 95 pounds of marijuana across the border in two propane tanks stored in the back of a pickup truck. According to the government, Seley suggested the scheme to his friend Landry, bought the tanks and welding equipment, and, with the help of Landry, bought and stored the marijuana in the tanks. Seley, on the other hand, testified that he knew nothing of the marijuana in the tanks: Landry alone bought the tanks and the drugs and loaded up the truck. Based on this evidence, the jury acquitted Seley of possession and of importation, but hung on conspiracy.
 
 
 20
 The Ninth Circuit affirmed the district court's finding[2] that the government was collaterally estopped from introducing in a second trial for conspiracy, evidence as to Seley's purchasing, packaging, transporting, and importing of the marijuana, because the jury had already found the defendant not guilty of these actions. In so affirming, the Ninth Circuit applied the following analysis,[3] to conclude that the jury must have decided the ultimate fact of knowledge in favor of the defendant:
 
 
 21
 (a) With respect to Count One, possession with intent to distribute, "[t]he volume [95 pounds] of marijuana in the propane tanks was such that any reasonable juror under the instructions would infer intent to deliver. Thus, the acquittal was likely based on the government's failure to prove possession or knowledge." Seley, 957 F.2d at 721. After determining that possession was not an issue because defendant was a passenger in the truck,[4] the court concluded that "[t]he acquittal on possession necessarily subsumed the ultimate fact that Seley did not know the tanks contained marijuana." Id. at 722.
 
 
 22
 (b) With respect to Count Two, importation, "there was no evidence that Seley believed the tanks contained a non-controlled substance. The acquittal must have been based on lack of intent to import, which once again could only mean that Seley did not know that the marijuana was in the tanks." Id.
 
 
 23
 (c) As a result of these findings, "the government may not retry Seley for a crime that would necessitate a finding that Seley had knowledge of the marijuana, or proof of acts that require such knowledge." Id.
 
 
 24
 The Seley analysis compels the court's holding in this case. With respect to Count Two, possession with intent to distribute, the volume of the cocaine [1200 pounds] found in the truck was "such that any reasonable juror ... would infer intent to deliver." Seley, 957 F.2d at 721.[5] Moreover, because appellant never argued to the jury that he did not intend to distribute the contents of the van, the jury could not have acquitted him on that basis. Id. at 722 n. 3.[6] Finally, because the appellant's possession of the cocaine was not an issue here, given his role as the van driver, "the acquittal on possession necessarily subsumed the ultimate fact that [appellant] did not know [the van contained a controlled substance.]" Id. at 722. In other words, the government failed to prove appellant's knowledge of the contents of the van beyond a reasonable doubt.
 
 
 25
 The government argues that, if the first jury had determined that the defendant knew nothing of the contents of the van, it would necessarily have acquitted him on the importation charge as well as the possession with intent charge. This "logical inconsistency" argument was explicitly rejected in Seley: "If we approached every acquittal suspecting that the jury may have nullified, acquittals could never be said to settle questions of ultimate fact, and Ashe would mean nothing at all. 'The mere possibility that the jury acted irrationally, without more, will not negate the collateral estoppel effects of a prior verdict if a rational interpretation of the verdict as a whole is possible.' " Seley, 957 F.2d at 723 (citing Pettaway, 943 F.2d at 1046)). Here, the jury's verdict can be rationally interpreted: while at least one juror believed that appellant intended to import some quantity of cocaine,[7] no juror believed that the government proved beyond a reasonable doubt that, on April 23, 1992, appellant knew the contents of his van to contain drugs.[8]
 
 
 26
 The preclusive effect of the first jury's finding that appellant lacked knowledge would be eroded by allowing a second jury to determine for itself whether appellant knew, beyond a reasonable doubt, that the substance he carried in the van was a controlled substance. See Dowling v. U.S., 493 U.S. 342 (1990) (agreeing with Ashe that a second prosecution is impermissible where "to have convicted the defendant in the second trial, the second jury had to have reached a directly contrary conclusion" to that reached by the first jury). The government was therefore collaterally estopped from relitigating the issue of appellant's knowledge in a second trial, and the district court should have dismissed the importation count of the indictment.
 
 
 27
 Having arrived that this conclusion concerning the collateral estoppel issue, we need not reach the prosecutorial misconduct allegation.
 
 
 28
 REVERSED.
 
 
 
 *
 The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The government agrees that the issue of appellant's knowledge of the contents of the truck was both raised and fully litigated in the first trial. Thus, the only Ashe factor to be resolved on this appeal is whether the issue of appellant's knowledge was necessarily decided in appellant's favor in the first trial
 
 
 [2]
 In light of the jury's finding that the defendant was not guilty of purchasing, packaging, transporting, or importing the drugs, the district court suppressed all evidence relating to these issues for a second trial on the conspiracy count, and granted the defendant's motion to dismiss the indictment
 
 
 [3]
 The Seley court examined three cases as "analytic models":
 In Ashe, 397 U.S. 436 (1970), the defendant was accused of robbing six men at gunpoint during a poker game. After being tried and acquitted as to the robbery of one of the victims, where the trial turned on the issue of identity, the defendant could not be tried for the robbery of any of the other players.
 In Pettaway v. Plummer, 943 F.2d 1041 (9th Cir.1991), the defendant was charged with murder on two theories: that he fired the fatal shot himself or that he aided and abetted his co-defendant. Although the jury convicted him of murder, it found in a sentence enhancement verdict that Pettaway did not use a handgun in the commission of a felony. When the conviction was reversed due to error in the aiding and abetting instruction, the government was collaterally estopped from presenting evidence on retrial that Pettaway fired the gun himself.
 Finally, in U.S. v. Corley, 824 F.2d 931 (11th Cir.1987), relied on by the district court, the defendant was charged with aiding and abetting embezzlement and conspiracy to defraud a savings and loan. The jury acquitted Corley on the substantive count but hung on the conspiracy count. The Eleventh Circuit concluded that the jury must have decided that Corley did not commit the overt acts alleged in the conspiracy, and thus, in the retrial on the conspiracy count, the prosecution could not introduce evidence of the aiding and abetting charge.
 
 
 [4]
 The court also noted that, because Seley never argued that he knew of the marijuana but did not possess it, the jury could not have acquitted him on such a theory. Seley claimed only that he did not know the tanks contained marijuana. 957 F.2d at 722 n. 3
 
 
 [5]
 We find this presumption controlling in light of the amount of drugs involved in this case, even though the district court did not specifically instruct the jury to presume intent to distribute from quantity. See, e.g., Turner v. U.S., 396 U.S. 398 (1970) (if it can be said with substantial assurance that the presumed fact, intent to distribute, is more likely than not to flow from the proved fact, possession of drugs, the inference of intent to distribute is justified; 14.69 grams of 5% cocaine mixture insufficient to support the inference); Seley, 957 F.2d at 721 (95 pounds of marijuana supports the inference); U.S. v. Savinovich, 845 F.2d 834 (9th Cir.1988) (two kilograms of cocaine supports the inference); U.S. v. Valentin, 569 F.2d 1069 (9th Cir.1978) (208 grams of cocaine supports the inference)
 
 
 [6]
 We thus reject the various arguments advanced by the government concerning lack of evidence of appellant's intent to distribute
 
 
 [7]
 The government presented the following evidence of intent to import: appellant knew the hospital delivery site was located in the United States, appellant was concerned that he did not have his immigration card when he crossed the border, and appellant drove across the border
 
 
 [8]
 Cf. U.S. v. Powell, 469 U.S. 57 (1984) (acquittal of conspiracy to possess cocaine with intent to distribute and of possession with intent to distribute was logically inconsistent with conviction for using telephone in order to commit conspiracy and possession crimes). While the Supreme Court found this mixed verdict of acquittals and convictions to be logically inconsistent, it refused to overturn the conviction based on the inconsistence alone. It theorized that the jury may have acquitted for reasons of lenity or compromise, but these reasons did not invalidate the convictions